IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **RONNIE W. FOWLER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:06-CV-1095-L** |
| § | |
| **PEOPLES BENEFIT LIFE** § | |
| **INSURANCE COMPANY,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's No-Evidence Motion for Summary Judgment and Traditional Motion for Summary Judgment, filed March 16, 2007. After careful review of the motion, response, reply, record, and applicable authority, the court **grants in part** and **denies in part** Defendant Peoples Benefit Life Insurance Company's ("Defendant") No-Evidence Motion for Summary Judgment and Traditional Motion for Summary Judgment.

**I.    Factual and Procedural Background**

Plaintiff Ronnie W. Fowler ("Fowler" or "Plaintiff") originally brought this action in the 196th Judicial District Court of Hunt County, Texas. Plaintiff asserted claims of breach of contract, breach of the duty of good faith and fair dealing, violation of Article 21.21 of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). Plaintiff's claims arise from his dispute with Defendant regarding whether he is entitled to receive the benefit of an accidental death insurance policy for his wife's death. Defendant removed the case on June 20, 2006, and subsequently moved for summary judgment of Plaintiff's claims.

Plaintiff's wife, Deborah Fowler ("Mrs. Fowler"), suffered from numerous health problems before her death, including, but not limited to, morbid obesity, type-2 diabetes, hypothyroidism, hypertension, severe congestive heart failure, chronic polyarthritis, and tobacco abuse. Def. App. 224. On or about November 11, 2002, Defendant's Policy was issued to Mrs. Fowler and went into effect. *Id*. at 4. The Policy, in part, states that Defendant will pay an accidental death benefit if a person insured under the Policy "dies as the result of an Injury." *Id*. at 6. Defendant's Policy defines "Injury" as a "bodily injury caused by an accident, directly and independently of all other causes." *Id*. at 5. The Policy also makes several exclusions to coverage, including an exclusion "for any loss caused by or resulting from . . . any sickness or bodily . . . illness." *Id*. at 6.

Mrs. Fowler tripped and fell in her home on or about May 26, 2003, and was subsequently diagnosed with fractured ribs, difficulty breathing, and severe chest pains. *Id*. at 224-25. On June 15, 2003, Mrs. Fowler was found unresponsive in her home and pronounced dead. Pl. App. P04. Medical examiners conducted an autopsy on June 16, 2003, and determined that Mrs. Fowler's death was the result of hypertensive and atherosclerotic cardiovascular disease. Def. App. 254. The examiners also noted that Mrs. Fowler's lobar pneumonia associated with her rib fractures was a significant contributory factor to her death, along with her preexisting obesity and diabetes. *Id*. The manner of death was described in the autopsy report as "accidental." *Id*.

The Deputy Chief Medical Examiner for the Tarrant County Medical Examiner's District, Dr. Marc Krouse, submitted an affidavit on March 9, 2007, and stated that based upon his expertise and medical probability, Mrs. Fowler would not have died when she did had she not fallen and sustained chest wall trauma on or about May 26, 2003. Pl. App. P05. Dr. Krouse further stated that

Mrs. Fowler's lobar pneumonia was the "immediate cause of death" when taken in context with Mrs. Fowler's preexisting diseases. *Id*.

Defendant contends that Mrs. Fowler's preexisting health problems were significant contributing factors to her death and that her injury was therefore not the "sole proximate cause" of death, therefore excluding her from coverage under the Policy. Fowler responds that under the Policy, the injury need only be a proximate cause of death, and not the sole proximate cause of death. Fowler also argues that the Policy's bodily sickness and illness exclusions are ambiguous and vague, and that they should be strictly construed by the court against Defendant in favor of coverage.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

#### A. Breach of Contract

Plaintiff, the beneficiary of the Policy, has alleged that Defendant breached the Policy by failing to pay him the insurance benefit when his wife died. Orig. Pet. ¶¶ 10-16. Defendant has

moved for summary judgment on this claim, arguing both that Mrs. Fowler's death is not covered by the Policy and that the Policy specifically excludes her death because of her preexisting medical conditions. Plaintiff responds that Defendant has misconstrued the Policy, that the Policy only requires that the covered injury be a proximate cause of the insured's death, and that Mrs. Fowler's other medical conditions do not trigger the Policy exclusion.

In Texas, insurance policies are generally controlled by the rules of construction and interpretation applicable to contracts. *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006) (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). In diversity cases, as here, the court interprets contracts according to the applicable state law which, in this case, is Texas law. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). "Terms in an insurance contract will be given their ordinary meaning unless the policy shows that the words were meant in a technical or different sense. If terms in the contract can be given a definite or certain legal meaning, they are not ambiguous and the court will construe the contract as a matter of law." *Yorkshire Ins. Co., Ltd. v. Diatom Drilling Co.*, ___ S.W.3d ___, 2007 WL 1287720, *3 (Tex. App. – Amarillo May 2, 2007, no pet. h.) (internal citations omitted). Under Texas law, when a policy is susceptible to more than one reasonable interpretation, courts must resolve the uncertainty by adopting the construction that favors coverage, and construe the contract against the insurer. *See, e.g., National Union*, 811 S.W.2d at 555; *see also Allstate Ins. Co. v. Disability Servs. of the Southwest Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 769 (5th Cir. 1999).

Intent to exclude coverage must be expressed in clear and unambiguous policy language. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex. 1993). Exceptions and limitations

in an insurance policy are strictly construed against the insurer. *Allstate Ins.*, 400 F.3d at 263 (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable . . . ." *Lincoln Gen.*, 468 F.3d at 858 (quoting *National Union*, 811 S.W.2d at 555).

The Policy here is for accidental death benefits. In another case, construing the insurance law of Georgia, the Fifth Circuit Court of Appeals noted that the court must construe such policies very precisely:

> Insurance against death by accident is usually, as here, afforded for a small premium and the coverage is correspondingly narrow. The liability is guarded by carefully chosen words, and a court has no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than it would have to increase the amount of the insurance.

*Phillips v. Home Sec. Life Ins. Co.*, 632 F.2d 1302, 1305 (5th Cir. 1980) (quoting *Life & Cas. Ins. Co. of Tennessee v. Brown*, 99 S.E.2d 98, 100 (Ga. 1957)). While not considering Texas law, this comment is consistent with state and federal decisions considering Texas law that have held that many accidental death insurance policies require that the accident in question be the "sole proximate cause" of the insured's death. *See Stroburg v. Insurance Co. of N. Am.*, 464 S.W.2d 827 (Tex. 1971); *Sekel v. Aetna Life Insurance Company*, 704 F.2d 1335 (5th Cir. 1983).

The twin questions of whether a death is covered or excluded by an accidental death insurance policy are often joined because the coverage language also often includes the exclusion. For example, the policy in *Sekel* covered an insured who "suffers a bodily injury caused by an accident and as a direct result of such injury and, to the exclusion of all other causes, sustains [death]." 704 F.2d at 1336. In that case, the court noted:

> The coverage clause in the [disputed] policy is similar to those in many other accidental death or disability policies, which typically provide that an insured can only recover if the loss is "directly and independently" or "independently and exclusively" caused by an accident. In Texas and most other jurisdictions these clauses have been construed to preclude recovery where disease or bodily infirmity is a concurrent proximate cause of death.

*Id*. at 1337. In *Stroburg*, the Texas Supreme Court considered the coverage and exclusion of a policy that provided coverage for accidental death "resulting directly and independently of all other causes from bodily injuries caused by [the] accident . . . ." 464 S.W.2d at 828. In that case, the court held:

> Independently means solely, only, standing alone. The logical meaning of the policy terms (independently of other causes) limits the coverage to accidental bodily injuries which are the sole cause of death. But even so, recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury.

*Id*. at 829 (internal citations and quotations omitted). Defendant points to several other decisions reaching the same conclusion that accidental death policies require that the covered death be "solely" caused by the accident, but these cases consider policy language that requires that death be "directly and independently" caused by the accident or injury. *See Mutual Benefit & Accident Ass'n v. Hudman*, 398 S.W.2d 110, 111 (Tex. 1965) (construing language that provided coverage where the "covered injuries result in [the insured's] death, independently of other causes . . . ."); *Connecticut Gen. Life Ins. Co. v. Stice*, 640 S.W.2d 955, 957 (Tex. App.–Dallas 1982, writ ref'd n.r.e.) (considering a policy that covered "death . . . caused by accidental bodily injury directly and independently of all other causes"); *Pan Am. Life Ins. Co. v. Youngblood*, 569 S.W.2d 951, 953

(Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) (construing language that provided: "death was the direct result of bodily injury through accidental means independently of all other causes.").

Only one case cited by Defendant provides support for its position that the "direct and independent" language in the Policy here should apply to determining how the death was caused. An appellate state court held:

> [T]he insurance policy in effect required that [the insured] suffer a bodily injury caused by an accident "directly and independently of all other causes." A coverage clause such as this case places the burden on the insured to prove that the loss in question was caused by an accidental bodily injury directly and independently of all other causes. . . . Thus, a coverage clause of this type limits recovery to accidental bodily injuries that are the sole cause of death.

*JCPenney Life Ins. Co. v. Baker*, 33 S.W.3d 417 (Tex. App. – Fort Worth 2000, no pet.) (internal citation omitted). The court, however, never cited the language of the policy itself, making it impossible to determine if the "direct and independent" language modified the cause of death or cause of accident.

Courts have also recognized that the language of policy exclusions varies in accidental death policies. In *Sekel*, the court acknowledged two categories of exclusionary clauses under Texas law: (1) those that excluded coverage only when disease or illness are a proximate cause, and (2) those that also excluded coverage when disease or illness are a more remote cause. 704 F.2d at 1337. The first, narrower category is created by using language such as "loss caused by or resulting from." *Id*. The second, broader category excludes coverage by describing bodily infirmity as a contributing factor, either "directly or indirectly." *Id*.

The parties disagree both as to whether Mrs. Fowler's death is covered by the Policy and as to whether her preexisting health conditions trigger the Policy exclusion. Defendant argues that the

Policy is like those at issue in *Stroburg* and *Sekel* and requires that the accident be the "sole proximate cause" of Mrs. Fowler's death. Plaintiff argues that the language of the Policy here is different from the policies in those cases, that the Policy simply requires that Mrs. Fowler's death be "a result of" her injury, and that the Policy exclusion is not triggered because it is a narrow exclusion.

The Policy states: "[w]e pay a benefit if an Insured dies as the result of an Injury." Def. App. 6. The Policy separately defines the term "Injury" in part I, definitions: "'Injury' means bodily injury caused by an accident, directly and independently of all other causes." *Id*. at 5. A separate section of the Policy, part IV, sets out exclusions to the Policy. *Id*. at 6. The relevant Policy exclusion states: "We do not pay any benefits for any loss caused by or resulting from . . . any sickness or bodily or mental illness." *Id*.

Defendant contends that the Policy's definition of "Injury" means that the "sole proximate cause" of death must be the accidental bodily injury sustained. Defendant repeatedly points to the "directly and independently of all other causes" language and cites cases that have construed policies using this "direct and independent" language and concluded that the sole proximate cause of death must be the injury.

Plaintiff argues that the plain language of the Policy requires only that death be "the result of an Injury," and notes that the "directly and independently of all other causes" language does not limit the Policy coverage but instead defines the word "Injury" for purposes of the Policy. Plaintiff distinguishes *Stroburg* and *Sekel* because the Policy language in each of those cases specifically required that the death or loss be "directly and independently" caused by the accident. Here, the Policy only requires that the death or loss be "the result of an Injury."

**Memorandum Opinion and Order – Page 9**

The court determines that *Stroburg* and *Sekel* do not control this case and that *JCPenney* cannot guide the court's decision because it cannot compare the language of the policies. The "direct and independent" language in the policies at issue in *Stroburg* and its progeny specifically limits the policy coverage and describes the relationship between the death and accident. Although the drafters of the Policy at issue did use the words "directly and independently of all other causes," those words are used to limit the relationship between the injury– but not the death– and the accident. The court concurs with Plaintiff's description of the policy: "*the Policy expressly requires that an accident be the sole proximate cause of the insured's bodily injury; however, the Policy does not require that the accidental bodily injury be the sole proximate cause of the insured's death.*" Pl.'s Resp. 14 (emphasis in original). Accordingly, the court must consider what degree of causation is required by the language "the result of."

The majority of Texas cases construing accidental death policies have considered policy language that requires that the accident be the "sole proximate cause" of the death. *See Stroburg*, 464 S.W.2d at 828; *Sekel*, 704 F.2d at 1336; *Mutual Benefit*, 398 S.W.2d at 111; *Connecticut Gen.*, 640 S.W.2d at 957; *Pan Am.*, 569 S.W.2d at 953. Some of these same cases, however, construe the language of policy exclusions as requiring only that the excluded condition be the proximate cause of death. For example, in *Sekel*, the Fifth Circuit held that the language "loss caused by or resulting from" required a relationship of proximate cause between an excluded condition and the death. 704 F.2d at 1337. Other courts have read *Stroburg* consistently: "the [*Stroburg*] opinion contains additional language suggesting that an exclusion from loss 'caused by or resulting from' certain risks will exclude liability 'only when such risks are a proximate as distinguished from an indirect or remote cause of the loss'." *Board of Trustees of the Employees Ret. Sys. of Texas v. Benge*, 942

S.W.2d 742, 746 (Tex. App. – Austin 1997, writ denied) (quoting *Stroburg*, 464 S.W.2d at 831-832)).

Accordingly, the court determines that the Policy here requires that while the injury must be caused solely by the accident, the injury must only be the proximate cause of death. This conclusion is consistent with a reading of the Policy as a whole. The Policy's exclusion also falls into the first, broader category, excluding coverage only where an insured's preexisting conditions are a proximate cause of her death. The drafters of the Policy could have chosen to use the broader exclusion, which would have prevented coverage where the preexisting condition "directly or indirectly" caused the death. *See Sekel*, 704 F.2d at 1337.

"Proximate causation in the insurance context, whether applied to coverage or to an exclusion, does not require the fact finder to search beyond the active, efficient, procuring cause to a cause of a cause." *Board of Trustees*, 942 S.W.2d at 748 (quoting *Stroburg*, 464 S.W.2d at 831-32). Although the expert medical testimony proffered by each party differs regarding the proximate cause of Mrs. Fowler's death, all of the expert testimony agrees that both her fall and her preexisting illnesses contributed to her death. Def. App. 20-22; Pl. App. P01-P25. Defendant attached two affidavits to its motion for summary judgment, containing the testimony of Dr. Joshua Schor and Dr. Norman Knee. Def. App. 23-25, 124-26. Both doctors determined that Mrs. Fowler's preexisting diseases proximately caused her death, but also that the lobar pneumonia associated with Mrs. Fowler's rib fractures contributed to her death. *Id*. at 24, 125. In other words, because Dr. Schor and Dr. Knee stated that Mrs. Fowler's preexisting diseases were the proximate cause of her death, the contributions of her preexisting diseases were not so remote as to render Defendant liable under the Policy.

Fowler attached the affidavit of Dr. Krouse to his response. Pl. App. P01-P06. Dr. Krouse noted that Mrs. Fowler's preexisting diseases contributed to her death, but determined that the accidental injuries Mrs. Fowler sustained were the "immediate cause" of her death, taken in context with her preexisting diseases. *Id*. at P05. Unlike Dr. Schor and Dr. Knee, however, Dr. Krouse did not comment whether Mrs. Fowler's diseases were a proximate cause of her death.

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Ragas*, 136 F.3d at 458. Accordingly, the court determines that a reasonable inference can be made from Dr. Krouse's medical opinion that Mrs. Fowler's accidental injuries were the proximate cause of her death, and that the contributions from her preexisting diseases were so remote or indirect as to render Defendant liable under the Policy.

Considering this evidence, the court determines that whether Mrs. Fowler's preexisting injuries were a proximate or remote cause of her death raises a genuine issue of material fact, and therefore Defendant is not entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### B. Other Claims

Defendant also moved for summary judgment on Plaintiff's DTPA, Article 21.21, and duty of good faith and fair dealing claims. Defendant raised this argument in its opening brief, but neither Plaintiff nor Defendant addressed these arguments in subsequent briefing.

The elements necessary to demonstrate the insurer's breach of the common law duty of good faith and fair dealing must be proved in order to establish a statutory violation under the Insurance Code or the DTPA. *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 460 (5th Cir.

1997). A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial. *Id.* at 459; *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 18 (Tex. 1994). If an insurer has a reasonable basis for denying or delaying payment of a claim, even if that basis is eventually determined to be erroneous, the insurer is not liable for the tort of bad faith. *Lyons v. Millers Cas. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). An insurer does not breach its duty merely by erroneously denying a claim. *Tucker v. State Farm Fire & Cas. Co.,* 981 F.Supp. 461, 465 (S.D. Tex. 1997). Similarly, evidence that shows only a *bona fide* coverage dispute does not rise to the level of bad faith. *Robinson v. State Farm Fire & Cas. Co.,* 13 F.3d 160, 162 (5th Cir. 1994). Insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim." *Higginbotham,* 103 F.3d at 459 (citing *St. Paul Lloyd's Ins. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex. App. – Houston [14th Dist.] 1991, writ denied)).

Here, the court finds that there are questions as to the coverage of the Policy and that Plaintiff has failed to provide any evidence of Defendant's bad faith. The only evidence before the court shows that the parties dispute the meaning of the Policy. "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). Accordingly, Plaintiff's other claims cannot survive as a matter of law.

## IV. Conclusion

For reasons stated herein, a genuine issue of material fact exists as to Plaintiff's breach of contract claim regarding whether Mrs. Fowler's preexisting health conditions triggered a Policy exclusion. Accordingly, Defendant is not entitled to judgment as a matter of law on this claim.

With respect to Plaintiff's claims for violation of the DTPA, Article 21.21, and the duty of good faith and fair dealing, no genuine issue of material fact exists, and Defendant is entitled judgment as a matter of law on these claims. Accordingly, the court **grants in part** and **denies in part** Defendant's No-Evidence Motion for Summary Judgment and Traditional Motion for Summary Judgment. Plaintiff's breach of contract claim remains for trial or other resolution, and the court **dismisses with prejudice** Plaintiff's claims for violation of the DTPA, Article 21.21, and the duty of good faith and fair dealing.

**It is so ordered** this 3rd day of August, 2007.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge